We'll now move to the second case on the argument calendar, Rudnitsky v. Garland. Good morning, Your Honors. Brian Connery on behalf of Mr. Rudnitskyy. May it please the Court? Counsel, could you either speak up a little or move the microphone closer, please? Oh, sorry. No problem. I guess I need to say I'd like to reserve maybe three minutes. Again, Brian Connery on behalf of Mr. Rudnitskyy. I wanted to start with Sotomayor's dissent in the Barton case, because unless the Court is with me on this, there's nothing to talk about. Barton didn't have a problem with the stop time rule being activated by the date of the commission of the offense. No big deal. Barton's case depended upon my client didn't travel outside the United States, therefore inadmissibility grounds don't apply. That's not what Rudnitskyy says. But, Counsel, regardless of whether Mr. Barton made or didn't make the same arguments that your client is making, the majority in Barton, and as I think you've just said, Justice Sotomayor's dissent doesn't dispute this, but the majority said cancellation is precluded if a non-citizen committed the relevant kind of offense, even if the conviction occurred after the seven years elapsed. So, how can we disregard that pronouncement by the United States Supreme Court, even if we were to agree with you that Mr. Barton made different arguments than your client is now making? How does that help you? Because this case presents a different question than the question presented by Barton. The world of immigration offenses, it's divided into 212 offenses and 237 offenses. To give meaning to the statute, to the stop-time statute in its entirety, the only way to read the statute is to read it in the manner in which Petitioner proposes that the Court read it, and this issue is not before the U.S. Supreme Court. Again, if this is not open for the Court's... So, that argument, it seemed like you were just making, which is, in other words, putting it as a super... I always have trouble saying this word, but superfluous. It was that part of the statute would be superfluous, right? I think that's what you were just referring to, but the Supreme Court did actually specifically address that, right, and rejected that argument and rejected it by saying that, well, yeah, there would be some superfluousness, that's not... But that's okay, and it rejected the argument that our Court had decided the previous decision, I think, when, based on a superfluousness argument, and the Supreme Court went the other way. So, I don't... We can't agree with you on that, can we, because that reasoning has specifically been rejected by the Supreme Court, right? I don't believe that Barton objected to that. I don't think Barton had a problem with the rest of the statute being superfluous. And so, again, the issue wasn't before the Court, and I think what the Justice calls it is an obiter dictum. It's not needed for the Court to say that. It does say that. I obviously can't say the Court didn't say that, but it wasn't necessary for the Court to say that to reach its decision. And if I may just make the argument that I think follows this statute as it's actually written, I think the best example might have been in the brief that... In the reply brief where I made the example... There's two terms. There's two terms we've got to cover. One is renders. When is somebody rendered deportable? And somebody isn't rendered deportable until there is a final conviction. And... Yeah, but the statute actually says when the alien has committed an offense, that renders the alien inadmissible. So we would have to, even putting aside what the Supreme Court said, which we can't, even if we were taking this up anew without regard to our prior cases or without regard to the Supreme Court's cases, we would have to be saying committed means convicted. No, Your Honor. I disagree. I think that applies only to 212 offenses. There's the disjunctive or in the statute which divides 212 offenses from 237 offenses. If you look at 237 offenses, you're not rendered deportable until the time of the conviction. And then you also have to give meaning to the language, whichever is earliest. And the way we give meaning to the term whichever is earliest is by recognizing the difference between deportable and inadmissible offenses. For instance, let's say someone has a delivery of a controlled substance offense and they're pending trial. Well, there may be reason to believe that he is inadmissible. And so he leaves the United States and he gets placed into deportation proceedings because he's going to believe that he's a drug trafficker. Well, he could actually win his criminal case, get acquitted, and still be, I should say, removed as inadmissible. And the thing you do every day in immigration law, you look at 212 offenses, 237 offenses, it divides the universe. If we're not going to divide the universe of cases in that manner, we're going to have to rewrite the entire INA. And we need to give meaning to the entire statute. Barton did not press that. Barton did not even argue that. Barton didn't have a problem. I'm reading the Supreme Court, the majority is saying, Barton argues the government's interpretation cannot be correct because the government would treat a surplus as half of the statute. Barton did argue that and the Supreme Court rejected it. This is on page 453, 1453. Okay, Your Honor, may I look at that? We all agree it's surplusage, but the Supreme Court says sometimes Congress does surplusage, which is... Is the language whichever is earliest addressed in the Barton case? I don't believe it is. I think that's just called surplusage. I reviewed the oral argument on this by Barton and his entire focus was on my client never left the United States, therefore he's not inadmissible. That was the entire focus of everything he said. And of course, the general rule is that you do need to give meaning to every part of the statute. You can't just leave part of it out. And here, when it comes to Mr. Radinsky, what we're doing is we're reading half of the statute and disregarding the other half. And I think because Radinsky is a legal permanent resident who did go to trial and was protected through direct appeal from deportation, oh, okay, so say this. Just to give an example of why the analysis is flawed, the day before the final conviction, the day before the Court of Appeals of Oregon said denied, he could have come back into the United States. He would have been admissible. So how can he be admissible one day and then the next day he's inadmissible? The statute is illogical. And that's why I'm asking the Court to please consider this position, because even though Barton says things, and I have to concede Barton says things, I don't mean to not concede that. That's not why I'm here. But I believe that it's dictum, because it wasn't necessary to the holding in the Barton case. Again, in the dissent in Barton footnote five, strike that, never mind that. These other reasons to say why the statute should be construed in the manner I'm suggesting, and it's that inadmissibility grounds, the reason they talk about as committed an offense rather than be convicted under inadmissibility grounds, there's this whole slew of categories of offenses that aren't convictions, that you can be found inadmissible without conviction. And they're listed in the brief, and they include things like reason to believe you're a money launderer, reason to believe you're a drug trafficker, reason to believe you're a person trafficker. Oh, the Ninth Circuit case that was mentioned, the reason that individual was inadmissible or ordered removed was because he admitted, he admitted to the controlled substance offense. He said, he's on the witness stand, he's asked, has he done drugs? He says something like, I've done cocaine. So he's admitted, and one of the grounds in the 237-82, if you look at the case, it's not have you been charged with the offense, it's have you admitted or been convicted of the offense. And that's why that Ninth Circuit case, the individual ended up being deported, and I don't challenge that either. I don't say that shouldn't have happened because he admitted it. Here, Mr. Radinsky has never admitted the offense. And what the statute does is, if it's construed in a manner that it was in Barton against Mr. Radinsky, again, it throws out the division between 212 offenses and 237 offenses. And that is just bizarre. If you're steeped, this sounds, I don't, I think I'm in my, am I in my reserve time? I better go there then. Okay, thank you. Thank you. Hopefully this works since the stand doesn't adjust. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. So our position is that Barton, yes, it did address the overall operation of the stop time rule. The issue in Barton was whether a non-citizen needs to be charged as inadmissible in order for the stop time rule to apply. So it has to be an inadmissibility offense, and the court said no. But in order to reach that issue, it did address the overall construction of the statute and found that it is the executive commission that terminates continuous residence. So it arguably could be viewed as dicta, but it is very persuasive, and it does indicate how the court would view the issue. And the board, in their decision here, did rely on Barton in determining that continuous residence ended on the date when he committed a disqualified criminal offense. The Supreme Court sometimes takes a dim view of our characterization of their opinions as dicta. Correct. So I would take a step back. I think the threshold question, as I was saying before, is the statute isn't as ambiguous when you look at the normal tools of statutory construction. The plain language of the statute alone resolves the issue. Section 1229BD1 says, the period of continuous residence in the United States shall be deemed to end when the non-citizen has committed an offense under Section 1182A2 that renders him inadmissible under Section 1182A2 or removable under Section 1227A2 or A4. The phrase, the non-citizen has committed an offense, immediately follows the word when. So the most natural and straightforward reading is that the non-citizen's period of continuous residence ends as of the date when he commits a disqualifying criminal offense. By using the word committed, Congress placed the unmistakable focus on the non-citizen's conduct that constitutes a crime, irrespective of the fact of whether he's later arrested or convicted. And contrary to petitioner's assertions, the subsequent renders clause does not create a separate temporal requirement. It's a restrictive clause that modifies the term offense by limiting and defining the types of offenses that stop the continuous residence clock as of the date of their commission. The term render means to cause to be or become, so the statute only requires that the non-citizen be or become inadmissible or removable for his criminal conduct to terminate his continuous residence. In other words, the non-citizen need not be charged and found inadmissible or removable for his criminal conduct to terminate continuous residence, which was the Barton Court's point in emphasizing that subparagraph B operates similar to a criminal recidivist sentencing statute and uses Section 1182A2 as a shorthand cross-reference as a category of offenses that preclude cancellation or removal if committed during the initial seven years. So, your friend almost cited footnote 5 from Justice Sotomayor's dissent. And footnote 5 said, courts have split over what event triggers the stop-time rule, commission of the offense, or a second later point at which the offense renders the non-citizen admissible, because this point is neither disputed here nor briefed. The court's opinion should not be read to resolve a circuit split that is not before the court. So, first, in your view, is Justice Sotomayor correct, and is her point at all relevant to our case? So, Your Honor, the government's position is that there is no circuit split, and if you look at the amicus brief cited in the Barton dissent, the two cases that it discusses are this Court's decision in Nguyen, and then the Second Circuit's decision in Heredia v. Sessions, and the Eleventh Circuit's decision in Barton before it went to the court. And the dissent, as you said, says that there is a split about what date terminates continuous residence under subparagraph B, but that wasn't actually at issue in Nguyen. This Court agreed with Her Sister Circuits that the stop-time rule under subparagraph B has two requirements. First, did the non-citizen commit a Section 1182A2 offense before accruing seven years of continuous residence? And second, was the non-citizen rendered inadmissible or immovable as a result of that offense? The Court disagreed with Her Sister Circuits about that second requirement. The Court found that Nguyen had committed a controlled substance offense before accruing seven years, but that he was not rendered inadmissible because he was an LPR not seeking admission, which is what the Barton Court ended up overruling. So there is no circuit split if you do kind of do that deeper dive into the amicus brief that is cited in the dissent, and perhaps Justice Sotomayor took amicus's position as fact without doing that further investigation. But if you do read those decisions, there is no circuit split here. Let me ask you a follow-up question. It seems like your counsel on the other side leans heavily on, and I think, I don't know if you got to finish your thought on the whichever comes earliest, so he leans heavily on that, and he also leans heavily on the, if somebody, in many of these cases, or some of the cases, the person admitted, so they didn't contest that they were convicted. And so, basically saying, I think his position is, if they've admitted it, I think his position may be that then it is the date when it was committed, which is also kind of odd because you think it would be, in that case, the date when you admitted it or something. But can you speak to those two things, the admitted slash, I haven't admitted, I fought it all the way until the end, and then the... The whichever is earliest. My point for the whichever is earliest was just that it does not refer to whether the non-citizen is inadmissible or immovable, it refers to the two ways of triggering the stop time rule under subparagraph A and B, so the first of two events, either the non-citizen is served with a notice to appear, or when the non-citizen commits one of the offenses listed under section 1182. As for having a little trouble following your second question, if you could maybe... He's saying, for some people, they don't ever contest that they... They admit that they committed an offense, right? And he's saying, well, for somebody like that, it would be when they committed the offense. If they don't come into court and fight that they actually committed the offense. But if they never acknowledge in these proceedings that they committed the offense and they're fighting it all the way, then it's only when they are eventually deemed inadmissible by being convicted. So he draws a distinction between people who have just admitted it, so they're not fighting it, versus people who are fighting it. Okay, I think I understand. So under the stop time rule, there are two different requirements. First is that they commit the 1182A2 offense before accruing the seven years. And then second, the non-citizen is eventually rendered inadmissible or immovable as a result of that offense. But once the two requirements are satisfied, the statute pegs the date of commission as the date when the non-citizen's continuous residence ends. So the fact that Petitioner here never admitted to committing the controlled substance offense is legally irrelevant. I think he's referring to Section 1182A2A, which is a non-citizen is rendered inadmissible by conviction or by the admission to the commission of a controlled substance offense or a CIMT. So I think that's where he's getting that argument from. But it doesn't matter because Petitioner here was convicted ultimately of that offense. I'm not sure I understand. Your argument is, yes, there's two different ways you can be rendered inadmissible, which is part of what— At least under this ground. Of course, under different— One is you just come in and say, yeah, I did it. And then once you've done that, now you're inadmissible, and it's the date of when you committed the offense under that circumstance. And the other one would be you never admit it, you fight it all the way to the end, but once you're actually convicted, now you're rendered inadmissible. And again, your position would be it's the date— It's the date of commission because that's— Either way, it goes back to the date. It does. And his view, I think, is that there's a difference between those two things. One of them goes back to the date of commission, maybe, or maybe not. I'll ask him when he gets back up. But the other one, he definitely thinks that if you fight it till the end, it's the date when you're actually convicted. It's legally irrelevant, Your Honor, because the statute says the non-citizen's period of continuous residence ends when he committed an offense. And here he did commit Section 1182A2 offense because he was convicted of possessing a controlled substance. So there is no—it is of no moment that he did not admit to ever possessing a controlled substance in immigration court and fought it in his criminal case. It could have said admit when the alien admits or is convicted of as opposed to committed, but it doesn't. It does not, Your Honor. And I think that makes sense. And the broader structure of Section 1229B, which is the cancellation statute, indicates that when Congress intended a conviction to govern eligibility for cancellation of removal, it simply said so. So under Section 1227ABA, the non-citizen is eligible for LPR cancellation removal so long as he has not been convicted of an aggravated felony. And Section 1229BB similarly conditions eligibility for non-LPR cancellation of removal so long as he has not been convicted of an offense under Section 1227A2, 1227A3, and 1182A2. And because Congress used the separate terms in Section 1229B itself, convicted and committed, the court must assume that it intended for each term to have a particular non-superfluous meaning. And the court—excuse me, Congress did distinguish between the commission of an offense and a conviction in other places in the case. Section 1227A2AI provides that a non-citizen is deportable if convicted of a CIMT committed within five years after the date of admission. And Section 1227A4 applies to non-citizens who have engaged in certain conduct relating to national security concerns. One of them is subparagraph B, which applies to non-citizens who have committed acts of torture or judicial killings. If there are no further questions from the Court, I would quickly sum up. Okay. Petitioner's period of continuous residence ended on the date of his commission of a controlled substance offense before he had resided continuously in the United States for the required seven years. The agency's findings on this point were consistent with the unambiguous text of the Soptime Rule and precedential decisions from the Board, Court of Appeals, and the Supreme Court. Based on the foregoing, the government would ask that the Court deny the petition for rebuttal. And Counsel, you have some time left for your rebuttal. Just a few things, Your Honors. The statute is ambiguous. There were four dissents in the BIA case, the unbanked case that heard the Soptime Rule to begin with, and that's the Perez case. There were four dissenters in the rule of lenity, which suggests that when there's an ambiguous statute, and it can be read to either favor or disfavor an immigrant, that it must be read to favor the immigrant, and that's what, again, that's again what I'm asking the Court to do here, and that's to use the entire statute instead of just a part of it. Counsel, can I ask you a follow-up question related to what I was talking to the government's lawyer about, which is your position, I believe, is that it makes a big difference here that your client didn't admit to the offense. So if the person admits, is it your position that they are that the Soptime Rule would be triggered by the date they admitted, or when they admit, would you say that it is triggered by the date of the commission of the offense? Your Honor, let me tell you where I'm getting that from. I'm getting that from the Controlled Substance Deportability Ground. The Controlled Substance Deportability Ground under INA 237A2 says convicted or admitted, and so when a legal permanent resident admits the he's a drug trafficker for that reason. And I didn't mean to not answer the Court's question, but that's where I'm getting that from. As to the Court's question, I don't believe a legal permanent resident is deportable unless and until he's convicted of the offense, unless on controlled substance offenses he admits, or under 212, if there's reason to believe he's a drug trafficker. And neither of which is the case for Mr. Radinsky. Oh, there's no circuit split on this. This jury trial, I guess jury trial is something that doesn't happen as often as... Counsel, do you have a final point? You're out of time. Thank you, Your Honor. We thank counsel for their arguments, and the case just argued is submitted.
judges: BENNETT, VANDYKE, THOMAS